1  SCOTT N. SCHOOLS (SC 9990)
   United States Attorney
2
3  BRIAN J. STRETCH (CSBN 163973)
   Chief, Criminal Division
4
   ALLISON MARSTON DANNER (CSBN 195046)
   Assistant United States Attorney
5
6      450 Golden Gate Avenue, Box 36055
       San Francisco, California 94102-3495
       Telephone: (415) 436-7144
7      FAX: (415) 436-7234
       Email: allison.danner@usdoj.gov
8
   Attorneys for the United States
9

10                    UNITED STATES DISTRICT COURT

11                   NORTHERN DISTRICT OF CALIFORNIA

12                       SAN FRANCISCO DIVISION

13

14  UNITED STATES OF AMERICA,        )    No.:    C 07-4555 JSW
                                     )    (No:    CR 05-552 JSW)
15        Plaintiff and Respondent,  )
                                     )
16     v.                            )    UNITED STATES' ANSWER TO
                                     )    SECTION 2255 PETITION
17  LARRY DARNELL HILL, JR.,         )
                                     )
18        Defendant and Petitioner.  )
                                     )
19  _____  )

20

21

22

23

24

25

26

27

28

USA'S ANSWER TO SECTION 2255 PETITION
C 07-4555 JSW (CR 05-552 JSW)

1

## TABLE OF CONTENTS

TIMELINESS OF THE PETITION AND ANSWER. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

PROCEDURAL HISTORY AND RELEVANT FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    I.    THE FAILURE TO ALLEGE "CRACK" IN THE INDICTMENT WAS
        CONSTITUTIONAL ERROR. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    II.   THERE IS NO BASIS FOR VACATING PETITIONER'S SENTENCE OR
        JUDGMENT ON THE BASIS OF THE DESCRIPTION OF "CRACK" AS
        "COCAINE BASE" IN PETITIONER'S INDICTMENT. . . . . . . . . . . . . . . . . 4

        A.    Petitioner Cannot Demonstrate any Prejudice From the Failure in the
             Indictment to Describe "Cocaine Base" as "Crack." . . . . . . . . . . . . . . . 5

        B.    Petitioner Waived Any Right to Contest His Indictment on Direct
             Appeal or Through a Collateral Challenge. . . . . . . . . . . . . . . . . . . . . . . 5

        C.    Petitioner Has Procedurally Defaulted His Claim to Error in the
             Indictment and Cannot Show Cause or Prejudice to Excuse His
             Procedural Default. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

             1.    The Decision in *Hollis* Does not Provide Cause. . . . . . . . . . . . . 7

             2.    Petitioner Cannot Show Prejudice From the Description of
                 "Crack as "Cocaine Base" in the Indictment. . . . . . . . . . . . . . . 8

             3.    Petitioner Does Not Claim He is Actually Innocent. . . . . . . . . . 9

        D.    Petitioner Did Not Receive Ineffective Assistance of Counsel. . . . . . . 10

        E.    Even if Brought on Direct Appeal, Petitioner's Challenge Would Fail
             Because the Defect in the Indictment Constitutes Harmless Error. . . . . . 12

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

# TABLE OF AUTHORITIES

## FEDERAL CASES

Bailey v. United States, 516 U.S. 137. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

Bousley v. United States, 523 U.S. 614, 620 (1998). . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

Clay v. United States, 537 U.S. 522, 532 (2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Duncan v. Morton, 256 F.3d 189, 202–03 (3d Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . 11

Engle v. Isaac, 456 U.S. 107, 130 n.35 (1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 12

Massaro v. United States, 538 U.S. 500, 504 (2003). . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 10

McCleskey v. Zant, 499 U.S. 467, 494 (1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Myers v. Washington, 646 F.2d 355, 364 (9th Cir. 1981). . . . . . . . . . . . . . . . . . . . . . . 7

Neder v. United States, 527 U.S. 1, 8 (1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Perez v. Rosario, 459 F.3d 943, 946 (9th Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Reed v. Ross, 468 U.S. 1, 16 (1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Schriro v. Summerlin, 542 U.S. 348, 351 (2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Smith v. Murray, 477 U.S. 527, 537 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8,11

Strickland v. Washington, 466 U.S. 668 (1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

United States v. Addonizio, 442 U.S. 178, 184–85 (1979). . . . . . . . . . . . . . . . . . . . . . . 12

United States v. Cotton, 535 U.S. 625 (2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

United States v. Du Bo, 186 F.3d 1177 (9th Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . 1, 13

United States v. Edwards, 397 F.3d 570, 571 (7th Cir. 2005). . . . . . . . . . . . . . . . . . . . 8

United States v. Frady, 456 U.S. 152 (1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7, 9

United States v. Gaudet, 81 F.3d 585, 591 (5th Cir. 1996). . . . . . . . . . . . . . . . . . . . . . 12

United States v. Hollis, 490 F.3d 1149 (9th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . 1, 4

United States v. Jeronimo, 398 F.3d 1149, 1153 (9th Cir. 2005). . . . . . . . . . . . . . . . . . 6

United States v. Newman, 6 F.3d 623, 627 (9th Cir. 1993). . . . . . . . . . . . . . . . . . . . . . 12

United States v. Palomba, 31 F.3d 1456, 1460 (9th Cir. 1994). . . . . . . . . . . . . . . . . . . 10

United States v. Shaw, 936 F.2d 412, 415-16 (9th Cir. 1991). . . . . . . . . . . . . . . . . . . . 8, 11

Withrow v. Williams, 507 U.S. 680, 721 (1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

# FEDERAL STATUTES

18 U.S.C. § 3553(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

18 U.S.C. § 924(c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

21 U.S.C. § 841(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

21 U.S.C. § 841(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 8

28 U.S.C. § 2255. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 6

1   The United States hereby files its response to the petition of Larry Darnell Hill, Jr. ("Hill"
2   or "petitioner") seeking an order to vacate, set aside, or correct his sentence, pursuant to
3   28 U.S.C. § 2255.  Hill bases his petition on the Ninth Circuit's decisions in *United States v. Du*
4   *Bo*, 186 F.3d 1177 (9th Cir. 1999) and, implicitly, *United States v. Hollis*, 490 F.3d 1149 (9th
5   Cir. 2007), *petition for cert. filed*, No. 07-6586 (Sep. 7, 2007).  Petitioner is correct that it was
6   constitutional error for the prosecution to fail to allege in the indictment that the unlawful
7   substance Hill possessed was "crack."  Nevertheless, this error does not affect the propriety of
8   the judgment and sentence imposed by this Court.  Hill failed to raise the indictment error in a
9   timely fashion, and it is procedurally defaulted.  In his plea agreement, Hill waived all rights to
10  challenge it on direct appeal and pursuant to 28 U.S.C. § 2255.  Equally important, Hill does
11  not–and cannot–allege that he suffered any prejudice as a result.  Although it was not explicitly
12  described in the indictment, Hill was fully aware that the substance he was charged with
13  distributing was "crack" and not some other form of "cocaine base."  Hill's guilty plea explicitly
14  identified the substance as crack.  The Presentence Report, the Government's sentencing
15  memorandum, and Hill's own sentencing memorandum/motion for downward departure all
16  identified the substance as crack.  It is inconceivable that Hill would have presented a different
17  defense had the indictment been corrected.  Hill cannot claim that he received ineffective
18  assistance of counsel or that the error caused cognizable harm.  For these reasons, this Court
19  should deny Hill's petition.

20                         **<u>TIMELINESS OF THE PETITION AND ANSWER</u>**
21      A conviction becomes final whenever the opportunity for direct appeal is exhausted.  *See*
22  *Clay v. United States*, 537 U.S. 522, 532 (2003).  Here, the defendant was sentenced on October
23  26, 2006, and this Court entered its judgment and commitment order on October 30, 2006.  The
24  defendant's petition was signed on August 16, 2007 and filed with this Court on August 30,
25  2007.  Accordingly, the petition is timely.  28 U.S.C. § 2255, para. 6.  On August 30, 2007, this
26  Court ordered the United States to file an answer within 30 days.  This answer, therefore, is also
27  timely.

28

1

## PROCEDURAL HISTORY AND RELEVANT FACTS

2    On August 30, 2005, Mr. Hill was charged in a three-count indictment alleging violations

3    of Title 21 of the United States Code, section 841(a).  Counts one and two alleged that Mr. Hill

4    "did knowingly and intentionally distribute a controlled substance, to wit [29 grams and 28

5    grams, respectively] of a mixture and substance containing cocaine base."  Count three alleged

6    that Mr. Hill "did knowingly and intentionally possess with intent to distribute a controlled

7    substance, to wit, approximately 53 grams of a mixture and substance containing cocaine base."

8    (Indictment, United States v. Hill, CR 05-552 JSW, attached hereto as Exhibit 1.)

9    On July 6, 2006, Mr. Hill pled guilty to counts one and two of the indictment.  Hill's plea

10    was entered pursuant to a plea agreement with the government.  In that plea agreement, the

11    defendant acknowledged that:

12    I agree that I am guilty of the offenses to which I will plead guilty,
       and I agree that the following facts are true: On or about July 27,

13    2005, I knowingly and intentionally distributed approximately 27.29
       net grams of a mixture and substance containing cocaine base. This

14    was subsequently re-weighed by the defense at 24.36 grams.  On or
       about August 3, 2005, I knowingly and intentionally distributed

15    approximately 26.87 net grams of a mixture and substance containing
       cocaine base.  This was subsequently re-weighed by the defense at

16    25.99 grams.  The total combined weight of these two substances was
       over 50 grams of a mixture and substance containing cocaine base.

17    *On each of these occasions, I knew the substance I was distributing
       was cocaine base, commonly known as "crack."*

18
19    (Plea Agreement ¶ 2 , United States v. Hill, CR 05-552 JSW, attached hereto as Exhibit 2)

20    (emphasis supplied.)   In the plea agreement, Hill agreed "to give up my right to appeal my

21    convictions, the judgment, and orders of the Court.  I also agree to waive any right I may have to

       appeal any aspect of my sentence . . . ." (*Id.* ¶ 4.)  Hill also agreed "not to file any collateral
22
       attack on my conviction or sentence, including a petition under 28 U.S.C. § 2255, at any time in
23
       the future after I am sentenced, except for a claim that my constitutional right to the effective
24
       assistance of counsel was violated." (*Id.* ¶ 6.)
25
       The Presentence Investigation Report (PSR), filed by the Probation Office, described the
26
       offense conduct as stemming from a series of interactions between Mr. Hill and a confidential
27
       DEA informant involving the "the purchase of cocaine base ("crack")." (Presentence Report 3,
28

United States v. Hill, CR 05-552 JSW).[1]  The PSR indicates that the defendant had two objections to the report.  The first involved an objection to a reference to the drugs involved in the dismissed count of the indictment and to other items seized during the search.  The second objection involved the weight of the quantities of the drugs involved in counts one and two. (Addendum to the PSR, 1.)  Neither of the objections referenced any dispute over the type of drug at issue in the case.

Sentencing in Hill's case occurred on October 26, 2006.  The PSR recommended a sentence of 120 months.  (PSR, Sentencing Recommendation 1.)  The defendant moved for a downward departure from his calculated criminal history category of Category VI.  (Defendant's Sentencing Memorandum/Motion for Downward Departure, United States v. Hill, CR 07-552 JSW, attached hereto as Exhibit 3.)  In addition, the defendant argued that the recommended sentence did not comport with the factors articulated in 18 U.S.C. § 3553(a).  Of particular importance to this petition, defendant acknowledged that he had pled guilty to distributing crack cocaine by arguing that "the disparity between the punishment for crack and powder cocaine leads to an unfair sentencing range."  (*Id.* at 5.)  Defendant asked this Court to sentence him to sixty months.  (*Id.* at 7.)  The Government requested a sentence of 188 months.  (United States' Sentencing memorandum 1, United States v. Hill, CR 05-552 JSW, attached hereto as Exhibit 4.) This Court ultimately sentenced Hill to a term of 144 months, to be followed by a four-year term of supervised release.[2]

Following sentencing, Hill did not file a notice of appeal.  The United States is not aware of any post-conviction motions filed by petitioner other than the petition that is the subject of this answer.

---

[1]The PSR is not attached to this response due to confidentiality concerns.  If the Court would like the United States to file a copy of the PSR under seal, the United States would be happy to do so.

[2]The United States has requested preparation of the transcripts of the guilty plea hearing that occurred on July 6, 2006 and the sentencing hearing that occurred on October 26, 2006.  If the Court would like the United States to file copies of these transcripts with the Court once they are prepared, the United States would be happy to do so.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## ARGUMENT

### I.    THE FAILURE TO ALLEGE "CRACK" IN THE INDICTMENT WAS CONSTITUTIONAL ERROR.

21 U.S.C. § 841(b) sets out the appropriate punishment for violations of 21 U.S.C. § 841(a), the offense to which petitioner pled guilty.  Because each count of the indictment to which Hill pled guilty involved more than five but fewer than fifty grams of crack, the appropriate punishment is provided in 21 § 841(b)(1)(B)(iii).  That subsection dictates that a sentence between five and forty years must be imposed for a violation of § 841(a) involving "5 grams or more of a mixture or substance . . . which contains cocaine base." 21 U.S.C. § 841(b)(1)(B)(iii). Tracking the statutory language of this provision, the indictment in this case charged that Hill distributed "a mixture and substance containing cocaine base."

Nevertheless, the Ninth Circuit recently determined that the reference to "cocaine base" in § 841(b)(1) is ambiguous, because Congress intended the higher penalties associated with "cocaine base" (as opposed to the lower penalties associated with powder cocaine) to apply only to crack and not to other forms of "cocaine base."[3]  *Hollis,* 490 F.3d at 1156.  As the *Hollis* court noted, "[w]hile all crack is cocaine base, not all cocaine base is crack." *Id.*  In consequence, the Ninth Circuit  "read[s] the statute . . . as requiring the indictment to charge, and the jury to find, "crack" to trigger the enhanced penalties associated with cocaine base." *Id.*

Since *Hollis* involves a question of statutory interpretation and not a rule of procedure, it applies retroactively.  *Bousley v. United States*, 523 U.S. 614, 620 (1998); *Schriro v. Summerlin*, 542 U.S. 348, 351 (2004).  Therefore the indictment in this case, despite its conformity with the statute underlying the prosecution and Ninth Circuit law as it existed at the time of its return, contained a constitutional error.

### II.    THERE IS NO BASIS FOR VACATING PETITIONER'S SENTENCE OR JUDGMENT ON THE BASIS OF THE DESCRIPTION OF "CRACK" AS "COCAINE BASE" IN PETITIONER'S INDICTMENT.

Petitioner has pled guilty, been found guilty and sentenced, and has not appealed any

---

[3]Powder cocaine, for example, is also technically a cocaine base.  *Hollis*, 490 F.3d at 1156.

1    aspect of his case.  Petitioner now seeks to avail himself of the writ of habeas corpus.  The

2    primary purpose of habeas is "to assure that no man has been incarcerated under a procedure

3    which creates an impermissibly large risk that the innocent will be convicted."  *Bousley,* 523 U.S.

4    at 622 (internal citations omitted).  The error that occurred in this case creates no risk that Hill

5    was innocent and wrongly convicted.  His petition for a writ should therefore be denied.

6
                  **A.    Petitioner Cannot Demonstrate any Prejudice from the Failure in the**
7                 **Indictment to Describe "Cocaine Base" as "Crack."**

8            As the Supreme Court has recognized, "most constitutional errors can be harmless."

9    *Neder v. United States*, 527 U.S. 1, 8 (1999) (quoting *Arizona v. Fulminante*, 499 U.S. 279, 306

10   (1991)).  There are multiple reasons, set out further below, for the denial of Hill's petition.

11   Although couched in various formulations and traveling under different statutory and procedural

12   guises, the reasons for which this Court should deny petitioner's claim rest upon a simple fact:

13   petitioner suffered no harm from the indictment's description of "crack" as "cocaine base."

14           If petitioner were ever confused about the type of drug at issue in this case (and, given the

15   facts, it is difficult to see how he could have been), this alleged misapprehension was quickly

16   corrected.  By the time the case was resolved, all of the parties involved understood that the

17   substance referred to in the indictment was "crack."  This understanding is evident from the

18   references to "crack" in the major court filings associated with Mr. Hill's plea and sentencing.

19   Most tellingly, petitioner admitted in the plea agreement that he knowingly and intentionally

20   distributed crack.  (Plea Agrmnt. ¶ 2.)  In addition, the PSR, the Government's sentencing

21   memorandum and Hill's sentencing memorandum all described the substance at issue as "crack."

22   Given the overwhelming evidence that he fully understand that he was charged with distributing

23   crack cocaine, petitioner cannot demonstrate any harm that flowed, or any prejudice that

24   occurred, from the indictment's description of the drug as "cocaine base."

25
                  **B.    Petitioner Waived Any Right to Contest His Indictment on Direct Appeal or**
26                **Through a Collateral Challenge**

27           For the benefits secured from the Government as a consequence of pleading guilty,

28   petitioner agreed to forego all his appellate and habeas rights, except for a claim of ineffective

1   assistance of counsel.  (Plea Agrmnt. ¶¶ 4, 6.)  Such promises are enforceable, provided that the

2   plea was knowing and intelligent.  *United States v. Jeronimo,* 398 F.3d 1149, 1153 (9th Cir.

3   2005).  Petitioner does not claim that his plea agreement was not knowing and intelligent.[4]  For

4   this reason, petitioner has waived any right to contest any errors in his indictment through a

5   petition pursuant to 28 U.S.C. § 2255.

6          **C.    Petitioner Has Procedurally Defaulted His Claim to Error in the Indictment
                   and Cannot Show Cause or Prejudice to Excuse His Procedural Default.**

7

8          It is well settled that a claim may not be raised in a section 2255 petition if there existed a

9   full opportunity for the defendant to be heard during the trial phase and on direct appeal.

10  *Massaro v. United States*, 538 U.S. 500, 504 (2003).  In this case, because the defendant did not

11  present a claim at trial or on appeal that his constitutional rights were violated as a result of the

12  error in the indictment, he has procedurally defaulted on that claim.

13         Where a defendant fails to raise an issue before the trial court, or presents the claim but

14  then abandons it and fails to include it on direct appeal, the issue is deemed "defaulted" and may

15  not be raised under Section 2255 except under unusual circumstances.

16         [A] prior opportunity for full and fair litigation is normally dispositive of a federal
           prisoner's habeas claim.  If the claim was raised and rejected on direct review, the
17         habeas court will not readjudicate it absent countervailing equitable
           considerations; if the claim was not raised, it is procedurally defaulted and the
18         habeas court will not adjudicate it absent countervailing equitable considerations
           (e.g., actual innocence or cause and prejudice, *see United States v. Frady*, 456
19         U.S. 152 (1982)).

20

21   _____

22         [4]The error in petitioner's indictment does not render his decision to plead guilty
     "unintelligent."  *United States v. Bousley* is not to the contrary.  In that case, the Court considered
23   whether a defendant's decision to plead guilty to the "use" of a firearm should be vacated
     because the petitioner was "misinformed as to the true nature of the charge against him."
24   *Bousley*, 523 U.S. at 614.  In *Bousley*, there was a significant likelihood that such misinformation
     had occurred, because Bousley had pled guilty before the Supreme Court issued its decision in
25   *Bailey v. United States*, 516 U.S. 137 (1995), which significantly narrowed the meaning of "use"
     of a gun for purposes of 18 U.S.C. § 924(c).  In consequence, Bousley did not understand that
26   "use" of a firearm required "active employment of the firearm."  *Bousley*, 523 U.S. at 617.  In
     this case, Hill does not contend that he was misinformed of the true nature of the charge against
27   him.  By the time he pled guilty, Hill understood that he was being charged with distributing
     crack cocaine, as evidenced by his admission in his plea agreement that he had distributed crack.
28

1    *Withrow v. Williams*, 507 U.S. 680, 721 (1993) (Scalia, J., concurring).  In this case, the

2    defendant did not raise the *Hollis* issue before this Court or on appeal.  Accordingly, he defaulted

3    that issue.

4        There are two means by which a defendant may overcome procedural default and have

5    the merits of a claim decided by the court, neither of which applies here.  First, a defendant who

6    failed to raise an issue at trial or on direct appeal may pursue the claim under section 2255 only if

7    he demonstrates sufficient "cause" for the default and "prejudice" resulting from it.  *Bousley*, 523

8    U.S. at 622.  The second means by which a defendant can excuse procedural default is by

9    establishing actual innocence.  *Id.* at 622.  Hill can establish neither exception.

10        Under the first exception to the procedural default rule, a defendant is required to show

11    both cause and actual prejudice.  *United States v. Frady*, 456 U.S. 152, 167–68 (1982).

12                    **1.      The Decision in *Hollis* Does Not Provide Cause.**

13        The Supreme Court has held that cause for failure to raise an issue exists "where a

14    constitutional claim is so novel that its legal basis is not reasonably available to counsel."  *Reed*

15    *v. Ross*, 468 U.S. 1, 16 (1984).  This kind of novelty, however, requires more than a showing that

16    circuit precedent foreclosed the claim at the time of direct review.  For example in *Engle v.*

17    *Isaac*, 456 U.S. 107, 130 n.35 (1982), the Court quoted the dissent in a Ninth Circuit decision to

18    say "futility cannot constitute cause if it means simply that a claim was unacceptable to that

19    particular court at that particular time."  *Id.* (citing *Myers v. Washington*, 646 F.2d 355, 364 (9th

20    Cir. 1981) (Poole, J., dissenting).  The Supreme Court reaffirmed this portion of *Engle* in

21    *Bousley* when it refused to find cause for a defendant's failure, in 1990, to anticipate the Court's

22    December 1995 holding in *Bailey v. United States*, 516 U.S. 137, abrogating the broad

23    interpretation of 18 U.S.C. § 924(c) that had governed in all the courts of appeals prior to that

24    time.  *Bousley*, 523 U.S. at 622–23 (because other defendants had argued, albeit unsuccessfully,

25    for the narrow reading of Section 924(c) later adopted in *Bailey*, counsel's failure to advance

26    argument could not be attributed to its novelty).  The question whether a claim's "novelty"

27    amounts to cause for failing to raise it on direct review is not "whether subsequent legal

28    developments have made counsel's task easier, but whether at the time of the default the claim

1    was 'available' at all." *Smith v. Murray*, 477 U.S. 527, 537 (1986).

2        The Ninth Circuit based its decision in *Hollis* on a case decided by the Seventh Circuit in

3    February of 2005. In that case, the Seventh Circuit examined the proper definition of "cocaine

4    base" in 21 U.S.C. § 841(b). In a phrase that the Ninth Circuit would borrow in *Hollis*, the

5    Seventh Circuit reasoned that "all crack is cocaine base but not all cocaine base is crack." *United*

6    *States v. Edwards,* 397 F.3d 570, 571 (7th Cir. 2005) (*relied upon in Hollis,* 49 F.3d at 1156). In

7    *Edwards* the Seventh Circuit reaffirmed a 1995 decision in that circuit that held that "cocaine

8    base" in section 841(b) means "crack." *Id.* at 572. In so doing, the Seventh Circuit canvassed

9    the approaches of other circuits and concluded that there exist a variety of resolutions to the

10   statutory definition of "cocaine base." The Seventh Circuit, for example, examined the Ninth

11   Circuit's own 1991 decision in *United States v. Shaw,* 936 F.2d 412, 415-16 (9th Cir. 1991),

12   concluding that that decision likely mandated the same result reached in *Edwards*. *Edwards,* 397

13   F.3d at 576. Therefore, by the time that petitioner's case was indicted in 2005, there was a

14   substantial body of caselaw–including from the Ninth Circuit–on the relationship between

15   "crack" and cocaine base" for purposes of § 841(b). Given this precedent, petitioner cannot

16   claim that there existed "cause" sufficient to excuse his procedural default.

17           **2.    Petitioner Cannot Show Prejudice From the Description of "Crack as**
                     **"Cocaine Base" in the Indictment.**
18

19       For the reasons described in Part A, above, petitioner cannot show he was prejudiced by

20   the failure to allege "crack" in the indictment. The Ninth Circuit's recent decision in *United*

21   *States v. Braswell* reinforces this point. *United States v. Braswell* No. 05-35009, Slip. Op. 11397

22   (9th Cir. Sep. 4, 2007). The facts in *Braswell* are similar to those in petitioner's case. Braswell

23   was indicted on a variety of charges involving drug offenses, including four counts of

24   distribution of a Schedule II controlled substance, in violation of 21 USC § 841(a)(1). Braswell

25   was sentenced to 400 months imprisonment. He appealed his conviction, and it was affirmed.

26   Braswell then filed a petition for habeas relief, which the District Court denied. The Ninth

27   Circuit granted a certificate of appealability limited to the question "whether Braswell's

28   constitutional rights had been violated by the indictment's failure to allege the kind of drug

1    involved in Braswell's offense." *Id.* at 11400.  Since Braswell had not raised this issue on direct

2    appeal, the court concluded that Braswell must demonstrate cause and prejudice in order to

3    excuse his procedural default.  With regard to prejudice, the court reiterated that "the prejudice

4    prong of the test requires demonstrating 'not merely that the errors at .... trial created a possibility

5    of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire

6    trial with error of constitutional dimensions." *Id.* at 11402 (*quoting United States v. Frady*, 456

7    U.S. 152, 170 (1982).").  In *Braswell*, the court noted that Braswell "has at no point argued, let

8    alone demonstrated, that any defect in his indictment worked to his actual disadvantage at trial in

9    any way, such as by making it difficult to prepare a defense for the charges against him." *Id.*

10   The court concluded that "nothing in Braswell's arguments before the district court, or this court

11   approaches the necessary showing of prejudice to overcome the procedural bar." *Id.*

12            Similarly, Hill has not argued why the error in his indictment made it "difficult to prepare

13   a defense for the charges against him."  Given that he was selling crack, it defies common sense

14   to believe that Hill was confused about the nature of the substance he sold to the confidential

15   informant.  For this reason, Hill has failed to demonstrate prejudice sufficient to excuse his

16   procedural default.

17                        **3.    Petitioner Does Not Claim He is Actually Innocent.**

18            Procedural default may also be excused if the petitioner demonstrates that he is actually

19   innocent.  "To establish actual innocence, petitioner must demonstrate that, 'in light of all the

20   evidence, it is more likely than not that no reasonable juror would have convicted him.'" *Bousley*

21   *v. United States*, 523 U.S. at 623 (*quoting Schlup v. Delo*, 513 U.S. 298 (1995)).  The Supreme

22   Court has described such cases as "extraordinary" and presenting "a fundamental miscarriage of

23   justice." *McCleskey v. Zant*, 499 U.S. 467, 494 (1991).  Petitioner does not claim that he is

24   actually innocent.  The error that he identifies arises from the wording in his indictment–not the

25   evidence brought against him or the process by which that evidence was evaluated.  Thus, excuse

26   for procedural default on the grounds of actual innocence does not apply here.

27            **D.    Petitioner Did Not Receive Ineffective Assistance of Counsel.**

28            Petitioner did not waive his right to seek habeas relief on the basis of alleged ineffective

1    assistance of counsel.  (Plea Agrmnt. ¶ 6.)  Indeed, the Supreme Court has stated that collateral

2    relief is the most appropriate vehicle to address claims of ineffective assistance of counsel.

3    *Massaro,* 538 U.S. at 504.  Of course, that petitioner has the right to seek habeas relief on this

4    issue does not mean that such relief should be granted.  Indeed, there is no basis for a finding of

5    ineffective assistance of counsel in this case.

6        The standards applicable to an ineffective assistance claim were defined in *Strickland v.*

7    *Washington*, 466 U.S. 668 (1984).  Such a claim has two components: inadequate performance

8    by counsel and prejudice resulting from that inadequate performance.  To prevail, a defendant

9    first must show that "in light of all the circumstances, the identified acts or omissions were

10   outside the wide range of professionally competent assistance." *Id.* at 690.  "This requires

11   showing that counsel made errors so serious that counsel was not functioning as the 'counsel'

12   guaranteed the defendant by the Sixth Amendment." *Id.* at 687.

13       However, "[j]udicial scrutiny of counsel's performance must be highly deferential," *id*. at

14   689, and courts must indulge a "strong presumption that counsel 'rendered adequate assistance

15   and made all significant decisions in the exercise of reasonable professional judgment.'"

16   *United States v. Palomba*, 31 F.3d 1456, 1460 (9th Cir. 1994) (*quoting Strickland*, 466 U.S. at

17   690).  "A fair assessment of attorney performance requires that every effort be made to eliminate

18   the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged

19   conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466

20   U.S. at 688 (citation omitted).  The Court noted that "[i]n making that determination, the court

21   should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to

22   make the adversarial testing process work in the particular case." *Id.* at 690.  The presumption is

23   that counsel was competent. *Id.*

24       The record in Hill's case reveals that petitioner's counsel provided a strong and vigorous

25   defense.  In particular, defense counsel contested the amount of crack at issue in the case.  For

26   example, defense counsel received a court order to test independently the crack that the

27   Government alleged that Hill distributed.  The plea agreement contains two competing quantities

28   of drugs on each count, one advocated by the United States and one advocated by the defendant.

1   (Plea Agmnt. ¶ 2.)  Further, Hill's plea agreement does not concede Hill's criminal history or

2   whether he was a career offender, as the government had sought.  (Plea Agrmnt. ¶ 8.)  Defense

3   counsel filed a detailed sentencing memorandum, raising multiple issues and gathering fourteen

4   "letters of recommendation" in support of defendant's plea for a sentence lower than that

5   recommended in the PSR.  (Defendant's Sentencing Memorandum at 4.)  Defense counsel

6   attacked head-on the heavy penalties applicable to drug offenses involving crack and argued that

7   this Court should, as a consequence, impose a lower sentence.  (Defendant's Sentencing

8   Memorandum at 5-6.)  In light of these efforts, petitioner's counsel cannot be described as

9   "ineffective."  *Strickland* requires a  "showing that counsel made errors so serious that counsel

10  was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."

11  *Strickland,* 466 U.S. at 687.  Petitioner has not met this heavy burden.

12          Prior to *Hollis*, the Ninth Circuit had not stated that "cocaine base," as articulated in 21

13  U.S.C. § 841(a) should be described as "crack," although the court had undoubtedly laid a strong

14  foundation for the conclusion as early as its decision in *United States v. Shaw*, 936 F.2d 412 (9th

15  Cir. 1991).   However, the fact there is procedural default when a lawyer fails to recognize the

16  significance of a claim supported by later case law does not automatically demonstrate that the

17  lawyer provided ineffective assistance of counsel.  *See, e.g., Murray*, 477 U.S. at 535–36.

18  Claims that counsel was ineffective for failing to perceive an impending change in the law have

19  generally have been rejected.  Where existing law at the time of counsel's decision did not

20  completely support the claim, courts have found it well within the range of competent assistance

21  for counsel to choose to focus on other issues, whether counsel consciously identified the

22  existence of the claim or not.  *Id.* at 527 (holding that counsel's failure to recognize the

23  significance of a claim supported by later case law did not demonstrate constitutionally

24  ineffective assistance of counsel); *Duncan v. Morton*, 256 F.3d 189, 202–03 (3d Cir. 2001)

25  (failure to object to jury instruction was not ineffective assistance of counsel where controlling

26  law was not decided until after the trial, although earlier state supreme court decisions pointed in

27  that direction); *United States v. Gaudet*, 81 F.3d 585, 591 (5th Cir. 1996) (counsel was not

28  ineffective for not presenting argument at sentencing because of his assessment of the law; claim

1  of ineffectiveness cannot be based on subsequent judicial decision that had not yet been
2  announced).

3      The correct result — a conclusion that the *Hollis* claim was sufficiently novel to allow
4  counsel's decision not to raise it to constitute effective counsel, but not so unavailable to
5  establish cause for the failure to present it — rests on fundamental principles limiting habeas
6  review.  The Supreme Court has repeatedly emphasized that the habeas remedy is extraordinary,
7  and will not be allowed to replace the appeals process, lest the interest in finality in criminal
8  prosecutions be thwarted.  *See, e.g., Engle*, 456 U.S. at 126–27; *United States v. Addonizio*, 442
9  U.S. 178, 184–85 (1979).  The procedural default analysis in this case is consistent with this
10 principle.  The defendant was convicted and sentenced in a proceeding in which all prevailing
11 norms and constitutional rules were followed, and he was represented by able counsel.
12 Subsequent changes in the law that do not expose a miscarriage of justice in his case should not
13 be recognized, given the overriding demand for finality in the prosecution of criminal offenders.
14 *Id.* at 185.

15     In any event, petitioner cannot meet the second half of the *Strickland* test–namely, that
16 any alleged ineffectivess of his counsel prejudiced him.  Under the prejudice standard, "there
17 must be a 'reasonable probability that, but for counsel's unprofessional errors, the result of the
18 proceeding would have been different.'"  *Perez v. Rosario,* 459 F.3d 943, 946 (9th Cir. 2006).
19 Petitioner can point to no decision that he or his counsel took that would have resulted in a
20 different outcome in his case.  Even if defense counsel had made a timely *Du Bo* challenge and
21 the District Court had dismissed the indictment, the United States could have reindicted the case
22 against Hill without offending the double jeopardy clause.  *United States v. Newman*, 6 F.3d 623,
23 627 (9th Cir. 1993).[5]

24 **E.      Even if Brought on Direct Appeal, Petitioner's Challenge Would Fail**
           **Because the Defect in the Indictment Constitutes Harmless Error.**
25

26     Petitioner claims that his indictment should be dismissed pursuant to *United States v. Du*

27 ───────────────

28     [5]This statement assumes this Court would have dismissed without prejudice.

1   *Bo,* 186 F.3d 1177 (9th Cir. 1999).  The Ninth Circuit in *Du Bo* concluded that, "if properly

2   challenged prior to trial, an indictment's complete failure to recite an essential element of the

3   charged offense is not a minor or technical flaw subject to harmless error analysis, but a fatal

4   flaw requiring dismissal of the indictment." *Id.* at 1179.  However, the *Du Bo* rule is limited to

5   challenges made "prior to trial."  Indeed, the *Du Bo* court counseled that "our holding is limited

6   to cases where a defendant's challenge is timely . . . untimely challenges to the sufficiency of an

7   indictment are reviewed under a more liberal standard." *Id.* at 1180 n.3.

8        That "more liberal standard" is properly described as "plain" or "harmless" error.  Indeed,

9   plain error was the standard the Ninth Circuit used in evaluating the defendant's challenge in

10  *Hollis*, the case that forms the basis for petitioner's claim.  In *Hollis* itself, the Ninth Circuit

11  concluded that failure to describe "cocaine base" as "crack" in the indictment was constitutional

12  error but ultimately harmless.  The *Hollis* court noted that, "while an *Apprendi* error occurred in

13  this case, it was harmless beyond a reasonable doubt.  There was overwhelming and

14  uncontradicted evidence at trial that the substance Hollis distributed was crack." *Hollis,* 490 F.3d

15  at 1157.  The court based it conclusion on the fact that "Hollis did not dispute at trial, in his

16  objections to the Presentence Report (PSR), or at sentencing the fact that what he distributed was

17  crack." *Id.*  Similarly, in petitioner's case, the plea agreement explicitly acknowledged that the

18  substance Hill distributed was crack.  Hill did not dispute the characterization of the drug as

19  crack in the PSR or in his sentencing memorandum.  Under these circumstances, even if

20  petitioner were squarely able to allege the indictment error before this Court, the inevitable

21  conclusion is that any error was ultimately harmless.

22       That the *Hollis* court's approach to indictment error was appropriate is borne out by the

23  Supreme Court's decision in *United States v. Cotton*, 535 U.S. 625 (2002).  In that case, the

24  prosecution had failed to allege the quantity of drugs at issue in the indictment.  Since the drug

25  quantity affected the statutory maximum, this was error under *Apprendi*.  The Court concluded

26  that this error, which was not objected to at trial,  should be reviewed under plain error analysis.

27  "Plain error requires the reviewing court to consider  1) error; 2) that is plain; and 3) that affects

28  substantial rights." *Id.* at 631.  The Court went on to say that "an appellate court may then

1  exercise its discretion to notice a forfeited error, but only if the error seriously affects the

2  fairness, integrity, or public reputation of judicial proceedings." *Id.* at 631 (internal citations

3  omitted). The *Cotton* Court determined that the failure to allege the drug quantity in the

4  indictment did not have such an effect. To the contrary, the Court concluded that "[t]he real

5  threat then to the 'fairness, integrity, and public reputation of judicial proceedings' would be if

6  respondents, despite the overwhelming and uncontroverted evidence that they were involved in a

7  vast drug conspiracy, were to receive a sentence prescribed for those committing less substantial

8  drug offenses because of an error that was never objected to at trial." *Id.* at 634.

9      The logic that underlies the *Cotton* decision applies equally in this case. There was a

10  constitutional error in petitioner's indictment. This error, however, did not seriously affect the

11  fairness or integrity of his prosecution in light of the extensive evidence that he knew he was

12  accused of distributing crack cocaine and that he had actually distributed crack cocaine, in

13  violation of 21 U.S.C. § 841(a).

14                            **CONCLUSION**

15      Petitioner's claim that his indictment was legally defective is untimely, waived, and

16  procedurally defaulted. He cannot demonstrate that his counsel provided constitutionally

17  ineffective counsel. Petitioner fully knew that he was being accused of distributing crack cocaine

18  in his case. In his plea agreement, he explicitly acknowledged his guilt of having distributed

19  crack. Under these circumstances, this Court should deny petitioner's motion to vacate, set

20  aside, or correct his sentence.

21

22  DATED: September 28, 2007              Respectfully submitted,
                                          SCOTT N. SCHOOLS
23                                        United States Attorney

24

25                                        _____
                                                  /s/
26                                        ALLISON MARSTON DANNER
                                          Assistant U.S. Attorney

27

28

1

<u>CERTIFICATE OF SERVICE</u>

2

The undersigned hereby certifies that she is an employee of the office of the United States

3

Attorney, Northern District of California and is a person of such age and discretion to be

4

competent to serve papers.  The undersigned certifies that she caused copies of

5

6

**UNITED STATES' ANSWER TO SECTION 2255 PETITION**

7

in the case of **UNITED STATES V. LARRY DARNELL HILL, JR., C 07-4555 JSW (CR**

8

**05-00552 JSW** ) to be served on the parties in this action, by placing a true copy thereof in a

9

sealed envelope, addressed as follows which is the last known address:

10

11

**LARRY DARNELL HILL, JR., PRO SE**
**#93249-111**
**FEDERAL CORRECTIONAL INSTITUTION**
**POST OFFICE BOX 1000**
**OXFORD, WISCONSIN 53952**

12

13

_____ (By Personal Service), I caused such envelope to be delivered by hand to the person or offices of each addressee(s) above.

14

_____ (By Facsimile), I caused each such document to be sent by Facsimile to the person or offices of each addressee(s) above.

15

16

__X__ (By Mail), I caused each such envelope, with postage thereon fully prepaid, to be placed in the United States mail at San Francisco, California.

17

18

_____ (By Fed Ex), I caused each such envelope to be delivered by FED EX to the address listed above.

19

I declare under penalty of perjury that the foregoing is true and correct.

20

21

Dated:  September 28, 2007

22

_____
                                            /s/

23

RAWATY YIM
United States Attorney's Office

24

25

26

27

28